UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CHIPOTLE MEXICAN GRILL, INC.,
A Delaware Corporation                                                                    PLAINTIFF

v.                              CASE NO. 4:10cv01976 BSM

CHIPOTLES GRILL OF JONESBORO, INC.,
An Arkansas Corporation; and CHIPOTLES
GRILL, INC., An Arkansas Corporation                                                DEFENDANTS

## ORDER

Plaintiff Chipotle Mexican Grill, Inc. ("plaintiff") requests a preliminary injunction [Doc. No. 2] against defendants Chipotles Grill of Jonesboro, Inc. and Chipotles Grill, Inc. (hereinafter referred to collectively as "defendants") to cease using the marks "Chipotles," "Chipotles Grill," "Chipotles Grill of Jonesboro," "Chipotles Mexican Grill," or any other mark which is confusingly similar to those owned by plaintiff. Defendants have responded. [Doc. No. 10]. For good cause shown, the motion is granted.

## I. BACKGROUND

Plaintiff is a Mexican fast-casual restaurant chain that began in Denver, Colorado in 1993. The restaurants operate under the registered trade names "Chipotle®" and "Chipotle Mexican Grill®." Plaintiff currently owns and operates 1,000 Chipotle restaurants around the United States, and the first Arkansas location was recently opened in Fayetteville, Arkansas. The word marks "Chipotle®" and "Chipotle Mexican Grill®" were both registered in 2000. Composite marks bearing the Chipotle name have also been registered. The first was registered in 2000.

Defendant Chipotle's Grill of Jonesboro, Inc., is a restaurant located in Jonesboro, Arkansas and was incorporated in Arkansas in 2009. Defendant Chipotle's Grill, Inc., is a restaurant located in Beebe, Arkansas and was incorporated in Arkansas in 2006. Both defendants are owned in whole or in part by Efren Montano.

Plaintiff filed suit against defendants on November 30, 2010, alleging: (1) trademark/service mark infringement in violation of the Lanham Act; (2) federal unfair competition in violation of the Lanham Act; (3) false representation and false designation of origin; (4) common law trademark infringement; (5) unfair competition; (6) misappropriation of good will and business reputation; (7) violation of the Arkansas Deceptive Trade Practices Act ("ADTPA"); and (8) violations of Arkansas Code Annotated § 4-71-201 *et seq*. The motion for preliminary injunction was filed the same day as the complaint.

## II. PRELIMINARY INJUNCTION STANDARD

"[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "In balancing the equities, no single factor is determinative." *Id.* at 114. "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* For example,

If the chance of irreparable injury to the movant should relief be denied is

outweighed by the likely injury to other parties litigant should the injunction be granted, the moving party faces a heavy burden of demonstrating that he is likely to prevail on the merits. Conversely, where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less.

*Id*.

### III. DISCUSSION

The *Dataphase* factors support the granting of a preliminary injunction. Each one weighs in favor of plaintiff.

A. <u>Threat of Irreparable Harm</u>

Irreparable harm can be presumed if plaintiff can show a likelihood of consumer confusion. *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987). As discussed below, plaintiff has established that consumer confusion is likely. There is therefore a threat of irreparable harm.

B. <u>State of Balance Between the Harms</u>

If a preliminary injunction is not entered, the harm to plaintiff will be greater than the harm to defendants if a preliminary injunction is entered. Plaintiff registered its trademarks and has spent millions of dollars promoting its brand. As demonstrated by the e-mails and reviews attached to plaintiff's motion, plaintiff's goodwill is being injured by the confusion created by the utilization of plaintiff's marks by defendants. Comparatively, the harm imposed upon defendants by a preliminary injunction is minimal because defendants are local restaurants that, presumably, rely upon local word of mouth to drive its patronage and not on a regional or national reputation that is associated with its name.

C.   Success on the Merits

Plaintiff is likely to succeed on the merits of its Lanham Act claims and similar state claims. The Lanham Act states, in pertinent part, that

(1) Any person who shall, without the consent of the registrant –

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1). Additionally,

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's good, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). "The Lanham Act prohibits the use of a mark in connection with goods or services in a manner that is likely to cause confusion as to the source of sponsorship of the goods or services." *Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005). In *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980), the Eighth Circuit set forth six factors to be considered when determining the likelihood of confusion: (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's and defendant's marks; (3) the degree to which the allegedly infringing product competes with the plaintiff's goods; (4) the alleged infringer's intent to confuse the public; (5) evidence of actual confusion; and (6) the degree of care reasonably expected of potential customers in light of the kind of product, its costs and the conditions of purchase.

A mark's strength is determined by its distinctiveness. "A distinctive trademark is one that is capable of identifying the source of goods because it is either inherently distinctive or, if not inherently distinctive, has acquired distinctiveness by acquiring secondary meaning." *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869 (8th Cir. 1994). Further, "[r]egistered trademarks . . . are presumed to be distinctive and nonfunctional." *Id.* at 869. Plaintiff's word marks and service marks have been in use since 1993 and registered since 2000. There is therefore a presumption that they are distinctive.

Plaintiff's marks and defendants' marks are very similar. The word marks are practically identical. In plaintiff's word marks, "chipotle" is singular, and in defendants'

word marks, "chipotle" is plural. Plaintiff's word marks describe "Chipotle" as a "Mexican Grill." Defendants' word marks describe "Chipotles" as a "Mexican Restaurante." The composite marks of plaintiff and defendants' restaurants are both a circle surrounding a pepper with the name of the restaurant wrapping around the circle. The only difference is that the pepper is inverted in defendants' composite mark.

There is not direct competition between plaintiff and defendants because plaintiff does not operate a Chipotle in Beebe or Jonesboro. The analysis, however, does not stop there because "[a] showing of direct competition . . . is not required, and the factor 'degree of competition' requires a broader examination of the products' relationship in the market." *Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049, 1056 (8th Cir. 2005). Indeed, plaintiff markets competing products because plaintiff operates several Chipotle restaurants in the region and has recently opened a restaurant in Arkansas. Further, plaintiff's and defendants' restaurants both serve Mexican food at similar prices.

Plaintiff argues that due to the similarity of the marks, it can be presumed that defendants intended to confuse the public. Although the marks are almost identical, this is not enough to establish intent to confuse.

The evidence submitted by plaintiff of actual confusion, however, is substantial. The items submitted included a number of e-mails sent to plaintiff's customer service website. In these e-mails, customers question whether the defendants' restaurants are associated with plaintiff. A few e-mails inform plaintiff of the defendants' restaurants, and state that it is confusing to other customers whether defendants' restaurants are part of plaintiff's brand.

Those customers that assume the defendants' restaurants are associated with plaintiff, complain of the poor service and food at defendants' restaurants. Also submitted are restaurant forum webpages. These reflect confusion as to the ownership of defendants' restaurants. One website, www.urbanspoon.com, even lists plaintiff's website as the website of defendants' restaurants. A restaurant review on www.associatedcontent.com also seems to link defendants to plaintiff. There is actual confusion.

Even if potential customers exercise reasonable care, it would be difficult to eliminate the confusion. The type of products marketed by plaintiff and defendants are similar; they are both Mexican grills. Plaintiff maintains that the price of a meal at its restaurants and defendants' restaurants is comparable. Further, the e-mails and websites attached to plaintiff's motion demonstrate that even after inquiry to outside sources, potential customers are still confused.

Plaintiff has sufficiently established that it is likely to succeed on the merits of its Lanham Act claims and similar state claims.

D.   Public Interest

This factor supports the entry of a preliminary injunction. "The public interest weighs in favor of protecting intellectual property and protecting consumers from fraud in all forms." *Nokota Horse Conservancy, Inc. v. Bernhardt*, 666 F.Supp.2d 1073, 1081 (D.N.D. 2009) (quoting *Nw. Airlines, Inc. v. Bauer*, 467 F.Supp.2d 957, 964 (D.N.D. 2006)).

IV. CONCLUSION

Plaintiff's motion for preliminary injunction is granted. Defendants are hereby ordered

to immediately cease and desist using the trademark, service mark, trade name, logo or any other identifying information such as "Chipotles," "Chipotles Grill," "Chipotles Mexican Grill," "Chipotles Grill Mexican Restaurante" or any other similar mark that would likely cause confusion between defendants and plaintiff.

IT IS SO ORDERED this 9th day of June, 2011.

_____
UNITED STATES DISTRICT JUDGE